IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                              :        CHAPTER ELEVEN
                                    :
MUIR HOUSE, INC. a/k/a THE MUIR     :        BANKRUPTCY NO.: 5-06-bk-50409
HOUSE a/k/a MUIR HOUSE INN &        :
RESTAURANT a/k/a MUIR HOUSE         :
a/k/a DELICIEUX a/k/a CULLINARY     :
CREATIONS,                          :
                DEBTOR               :
                                    :
CASH-ON-DEMAND, LLC,                :
                MOVANT               :
                                    :
        vs.                          :
                                    :
MUIR HOUSE, INC.,                   :
                RESPONDENT           :

# <u>OPINION</u>[1]

Presently before the Court are two motions filed by the Movant, Cash-On-

Demand, LLC, (hereinafter "COD"), versus the Debtor seeking, in one instance, the

lifting of the automatic stay imposed by 11 U.S.C. § 362(a) (Doc. #45) and, in the other, a

motion to prohibit the use of cash collateral (Doc. #48).  For the reasons provided herein,

the Court denies the relief requested in both motions.

The relief requested in both motions centers around a receivables purchase

agreement dated November 17, 2005.  Several issues are presented for resolution, namely,

was the agreement a sale of accounts as opposed to a secured loan and the interpretation

---

[1] Drafted with the assistance of Richard P. Rogers, Law Clerk.

[m:\users\cathy\opinions\5-06-bk-50409_Muir_House.wpd]

and application of certain relevant sections of the Uniform Commercial Code as enacted in Pennsylvania together with certain applicable sections of the Bankruptcy Code found in Title 11.

Article 2 of the receivables purchase agreement titled Purchase and Sale of Future Receivables provides in pertinent part that the Debtor sold and COD purchased for $21,000.00 the Debtor's right, title, and interest in 15% of each of the Debtor's future credit card receivables owed to the Debtor until such time as the Debtor paid to COD $28,405.00. Further, the parties agreed that the purchase and sale of the purchased receivables did constitute a sale of accounts as that term was used in Article 9 of the Uniform Commercial Code. Article 2 also provides that "[i]f this Agreement does not constitute a valid sale, assignment, transfer and conveyance of all right, title and interest of Merchant (Debtor) in the Purchased Receivables, despite the intent of the parties hereto, the Merchant hereby grants a 'security interest' (as defined in the UCC) in the Purchased Receivables and the parties agree that this Agreement shall constitute a security agreement under the UCC."

Significant to the Court's resolution of this controversy is to note that the instant Chapter 11 bankruptcy case was filed March 30, 2006, and the financing statement reflecting the secured transaction between the parties was not filed in the public record until after the date of the bankruptcy filing.

While both parties engaged in spirited and thought-provoking advocacy, unfortunately that did not carry over into a very articulate presentation of their respective

positions to the Court. For instance, the Movant took the position that the post-petition accounts were not property of the estate, but still requested this Court lift the automatic stay as a "band-aid" to go into state court to collect those receivables. Addressing the impact of 11 U.S.C. § 552 on the continued viability of a valid lien in Debtor's post-petition assets, namely, the generation of credit card purchases, the Movant said that the agreement was for a true sale of credit card accounts; which position effectively undercut the Movant's own motion to prohibit the use of cash collateral. The Movant was unsure exactly, upon questioning, what the cash collateral was that was subject to the security agreement. The Movant also indicated that it was uncomfortable characterizing the underlying transaction as a loan which was secured by cash collateral. Again, the Movant argued that 15% of each credit card transaction was not part of the estate, once again undermining the Movant's own cash collateral argument.

For the Debtor's part, it repeatedly argued that it was impossible to sell future accounts or future receivables but was unable to present to the Court any support for that position. The Debtor takes the position that this was a loan secured by accounts receivable, and, while the accounts receivable would be cash collateral, any lien in that cash collateral would not extend post-petition because of the operation of 11 U.S.C. § 552.

Nonetheless, the colloquy between the Court and the parties raised a number of very interesting legal issues; enough to advise this Court to take the instant matter under advisement. Of significance to this Court's resolution is a recounting of the procedural

posture which brings this case before the Court.  Keep in mind, the primary issue argued by the parties is whether the underlying receivables purchase agreement presented a true, outright sale of accounts or a security agreement securing the advancement of a loan to the Debtor.  Upon reflection, the Court has determined that under the present posture of this case, resolution of that issue is of no moment.  In other words, regardless of which finding the Court would make in its determination of the status of the underlying receivables purchase agreement, no relief can be granted in favor of the Movant.  Should the Court find that the agreement embodied a true sale of accounts, then, even as conceded by the Movant at the time of the hearing, there is no need to lift the automatic stay by providing what can be characterized, at best, as a comfort order for the Movant.  Moreover, the UCC Article 9 requires that such a sale of accounts be "perfected" by actual filing in the public record, an obligation not accomplished until after bankruptcy.  11 Pa.C.S.A. § 9102(a)(1)(vii) and comment 5a thereto; 13 Pa.C.S.A. § 9109(a)(3).  The Court declines to issue such a comfort order in this case.

Additionally, any security interest that the Movant had in the accounts would not attach, post-petition, to any future accounts generated by the Debtor's business.  11 U.S.C. § 552.  Whether this transaction be deemed a sale or a secured transaction, it is still subject to the strong-arm powers of a trustee which may be capable of defeating the unperfected interests of the Movant.  11 U.S.C. § 544.  None of this is to say that perhaps the ultimate determination as to characterization of the underlying receivable purchase agreement will ultimately be required, but the present Motion for Relief from Stay and the

Case 5:06-bk-50409-JJT    Doc 134    Filed 04/18/08    Entered 04/18/08 11:07:22    Desc
Main Document      Page 4 of 5

Motion to Restrict Debtor's Use of Cash Collateral do not lead to this Court's required finding in that regard. The tenuous nature of the Movant's position suggests that denial of both motions is indicated.

An Order will follow.

Date: April 18, 2008

John J. Thomas, Bankruptcy Judge

**(CMS)**

*This opinion is electronically signed and filed on the same date.*